Anna B. Stewart, Appellant, v. The Union Mutual Life Insurance Company, Respondent.

1. Life Insurance — Construction of Contract of Foreign Company. Where, in an action upon a policy of life insurance issued by a corporation of another state, the contract is to be construed under the laws of that state, it may properly be assumed that those laws were, or are, the same as our own, in the absence of evidence tending to show a difference.

2. Restriction of Power of Agents. The right of insurance companies to restrict their liability for acts of their agents, by inserting clauses in the application and policy restricting the powers of agents, must be recognized unless, by so doing, their contracts would become tainted with fraud, and in such cases it will be presumed that a waiver was intended rather than fraud.

3. Representatives of Company. An insurance company publishes and holds out to the public persons as its local manager and cashier, respectively, by furnishing such persons with stationery, used in writing to third parties, the printed headings of which contain their names, followed by the words "manager" and "cashier," with their local address, under the name of the company.

4. Premium Note in Lieu of Cash Payment. In an action on a life insurance policy, providing that it shall not constitute a contract until the first premium shall have been paid during the life of the applicant and that no agent or any other person except the president or secretary has power to change the contract or to waive forfeiture, an apparent acceptance, by the company, of a contract made by its local manager, before and on delivery of the policy, to take a note for the first premium, and a recognition of his authority to so extend the time of payment, may be inferred from the facts that the company held the note at its local office, warned the policyholder, through its local cashier, as to the time the note would be due, and made no complaint with reference to its being given in the place of cash payment.

5. Acceptance of Premium Note. An acceptance, by the company, of a note in payment of the first premium may be inferred from a notice, through its local cashier, to the policyholder, stating when his note "given in settlement of premium due" on the policy "will be due and payable."

6. Extension of Time of Payment of Premium — Death in Meantime. Where a note given in payment of the first premium, on delivery of a policy, has been so accepted and held by a life insurance company as to imply a recognition of a contract made by the manager for credit on the first premium, and of his authority to extend time of payment, a failure of the insured to pay a check given by him to take up the note does not work a forfeiture of the policy, when the manager has given the

33

insured to understand that it would be satisfactory if the check was paid by a certain time, and the insured dies in the meantime.

7. CONTRACT FOR CREDIT ON FIRST PREMIUM.   When a note has been given for the first premium on a life insurance policy, a contract between the local manager of the company and the applicant for insurance, that the latter was to have credit on the first premium, may be inferred from a letter from the manager to the applicant, saying: " I shall be pleased to fix up the insurance for you next week and arrange for the premium payment, so as to be mutually satisfactory."

8. PRESUMPTION OF WAIVER OR ESTOPPEL.   Where the local manager of a life insurance company contracts with an applicant for insurance that he is to have credit on the first premium, and represents to him, on delivering the policy and taking a note for the first premium, that he has an insurance, although the policy provides for immediate payment of premium as a condition precedent to insurance and forbids changes, the knowledge of the agent as to the terms of the contract and of the non-compliance with the policy at its delivery is imputable to the company, and it will be presumed, in case of the death of the policyholder during the credit period, to have known the terms of the contract entered into by its agent, and either to have waived the provision of the policy for immediate payment of premium or to hold itself estopped from setting it up.

*Stewart* v. *Union Mutual L. Ins. Co.*, 76 Hun, 267, reversed.

(Argued January 31, 1898; decided March 8, 1898.)

APPEAL from a judgment of the late General Term of the Supreme Court in the first judicial department, entered March 19, 1894, affirming a judgment in favor of defendant entered upon a nonsuit.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Frederick H. Kellogg* for appellant.   The court below erred and its judgment should be reversed. (*Holmes* v. *D'Camp*, 1 Johns. 37; *Milliman* v. *R. R. Co.*, 3 App. Div. 109; *Byrne* v. *R. R. Co.*, 58 N. Y. S. R. 128; *Carpenter* v. *P. R. R. Co.*, 13 App. Div. 328; *Hastings* v. *B. L. Ins. Co.*, 138 N. Y. 473; *McAllister* v. *N. E. M. L. Ins. Co.*, 101 Mass. 558; *Miller* v. *B. L. Ins. Co.*, 12 Wall. 285; *Stepp* v. *Nat. L. Ins. Co.*, 37 S. C. 417; May on Ins. 271, § 216; *Boehen* v. *W. C. Ins. Co.*, 35 N. Y. 131; *Sheldon* v. *C. M. Ins. Co.*, 25 Conn. 207.)   The whole theory of the defense rests upon the assumption that defendant's manager of the

New York department accepted a note in payment of the first premium, and thereby altered and changed the terms of the policy without authority, and that the note was not paid. There is no evidence in support of this theory. (*Steen* v. *N. F. Ins. Co.*, 89 N. Y. 315 ; *Harrison* v. *G. Ins. Co.*, 67 Fed. Rep. 577 ; *Davison* v. *Powell*, 16 How. Pr. 467 ; *Livingston* v. *Hammer*, 7 Bosw. 670 ; *Salinger* v. *Lusk*, 7 How. Pr. 430 ; *Young* v. *Catlett*, 6 Duer, 437 ; *Shearman* v. *N. Y. C. Mills*, 1 Abb. Pr. 187 ; *Hopkins* v. *Everett*, 6 How. Pr. 159 ; *Stuber* v. *McEntee*, 142 N. Y. 206 ; *Clark* v. *Dillon*, 97 N. Y. 374.) Defendant, in its affirmative defense, averred some of the conditions of the policy and set up new matter constituting a breach. Its failure to prove this defense was fatal. (*Goldschmidt* v. *M. L. Ins. Co.*, 102 N. Y. 486 ; *Roos* v. *M. Ins. Co.*, 27 La. Ann. 409 ; *W. C. M. Ins. Co.* v. *Chamberlain*, 16 Gray, 65 ; *P. F. Ins. Co.* v. *Kittle*, 39 Mich. 51 ; *Reithmuller* v. *F. Assn.*, 38 Mo. App. 118 ; *Warbasse* v. *S. C. M. Ins. Co.*, 42 N. J. L. 203 ; *Spencer* v. *C. M. L. Ins. Assn.*, 142 N. Y. 505 ; *Town of Venice* v. *Breed*, 65 Barb. 597 ; *Johnson* v. *Young*, 18 Col. 173 ; *Arthur* v. *H. F. Ins. Co.*, 78 N. Y. 462.) The granting of the motion to dismiss was due to a misunderstanding of the facts proven. It was error to grant it upon the grounds stated. (*Binsse* v. *Wood*, 37 N. Y. 526 ; *Thayer* v *Marsh*, 75 N. Y. 340 ; *Devoe* v. *Brandt*, 58 Barb. 493 ; *W. S. Bank* v. *Town of Solon*, 136 N. Y. 474 ; *Sprague* v. *Sprague*, 80 Hun, 285.) Do the manager's letters show that the note was unpaid ? If so, they also show that the time for payment had been extended and had not expired. The conclusions are inseparable — one follows the other. (*Stuber* v. *McEntee*, 142 N. Y. 205 ; Whart. on Ev. § 1267 ; *Bryant* v. *Stilwell*, 24 Penn. St. 314 ; *Lymington* v. *McLin*, 1 D. & B. 291 ; *Hall* v. *Vanderpool*, 156 Penn. St. 152 ; *McDonough* v. *O'Niel*, 113 Mass. 92 ; *Winchell* v. *Edwards*, 57 Ill. 41 ; *W. Ins. & Bkg. Co.* v. *Tieger*, 18 S. E. Rep. 195 ; *Krause* v. *U. S. Eq. L. Assn.*, 99 Mich. 461.) The policy was not forfeited even if the note was not paid. (*Palmer* v. *P. M. L. Ins. Co.*, 84 N. Y. 63 ; *H. F. Ins. Co.* v. *Kennedy*, 66 N. W

Rep. 278; *Griffith* v. *N. Y. L. Ins. Co.*, 101 Cal. 627.) The manager's acceptance of the note would not have made the policy void in its inception. (*Walsh* v. *H. F. Ins. Co.*, 73 N. Y. 5; *Coles* v. *J. Ins. Co.*, 23 S. E. Rep. 732; *Berry* v. *A. C. Ins. Co.*, 132 N. Y. 58; *Trustees* v. *B. F. Ins. Co.*, 19 N. Y. 305; *Pechner* v. *P. Ins. Co.*, 65 N. Y. 208; May on Ins. § 143; *Marvin* v. *U. L. Ins. Co.*, 85 N.Y. 283; *Ins. Co.* v. *Wilkinson*, 13 Wall. 222; *Van Schoick* v. *N. F. Ins. Co.*, 68 N. Y. 436; *U. S. L. Ins. Co.* v. *Ross*, 159 Ill. 476.) In the case at bar it is sought to apply the conditions in the policy to the payment of the first or delivery premium; this is not permissible. (*Berry* v. *A. C. Ins. Co.*, 132 N.Y. 58; *Van Schoick* v. *N. F. Ins. Co.*, 68 N. Y. 434; *Bennett* v. *N. B. & M. Ins. Co.*, 81 N. Y. 273; *Woodruff* v. *I. F. Ins. Co.*, 83 N. Y. 133; *Haight* v. *C. Ins. Co.*, 92 N. Y. 51; *Walsh* v. *H. F. Ins. Co.*, 73 N. Y. 5; *M. L. Ins. Co.* v. *Fields*, 26 S. W. Rep. 280; *Palmer* v. *P. M. L. Ins. Co.*, 84 N. Y. 63.) It is claimed that, by the conditions in the policy, no payment of premiums is valid except in exchange for the company's receipt signed by the president. This condition refers to the renewal premiums. The policy signed by the president is sufficient receipt for the first premium. (*Sanford* v. *C. T. M. A. Assn.*, 147 N. Y. 326; 67 N. Y. S. R. 225.) Defendant is estopped from claiming that the policy was void or forfeited. (*W. Ins. & Bkg. Co.* v. *Tieger*, 18 S. E. Rep. 195; *S. C. T. Co.* v. *Morris*, 43 Kans. 282; *P. G. & C. Co.* v. *C. G. & C. Co.*, 20 Ill. App. 473; *Peck* v. *D. & W. Co.*, 32 N. Y. S. R. 405; *Lancaster Co.* v. *C. & C. R. Co.*, 28 S. C. 134; May on Ins. § 143; *Kiernan* v. *D. C. M. Ins. Co.*, 150 N. Y. 190; Biddle on Ins. 1048; *H. F. Ins. Co.* v. *Kennedy*, 66 N. W. Rep. 278; *Palmer* v. *P. M. L. Ins. Co.*, 84 N. Y. 63; *B. Ins. Co.* v. *Rivers*, 28 S. W. Rep. 403; *Kahn* v. *T. Ins. Co.*, 23 Ins. L. J. 401.) The defendant has not complied with the statute of this state regulating the forfeiture of life insurance policies. (L. 1877, ch. 321; *Carter* v. *B. L. Ins. Co.*, 110 N. Y. 15; *Phelan* v. *N. W. M. L. Ins. Co.*, 113 N. Y. 147; *Baxter* v. *B. L. Ins. Co.*, 119 N. Y. 450.)

*E. V. B. Getty* and *Chas. F. Moody* for respondent. The decision of the court on demurrer did not change the rule of law that the burden of proof is on the plaintiff. ( *Whitlatch v. F. & C. Co.,* 149 N. Y. 45; Code Civ. Pro. § 533; *Bogardus* v. *N. Y. L. Ins. Co.,* 101 N. Y. 328.) The company was not bound by the acts of Mr. Crane contrary to the conditions of the policy. (*Conway* v. *P. M. L. Ins. Co.,* 140 N. Y. 79; L. 1889, ch. 282, § 1.) Assuming that a credit had been extended by the agent Crane, the failure by the insured to pay the note when due invalidated the policy. ( *Wilkins* v. *S. Ins. Co.,* 20 Ins. L. J. 478; *Marvin* v. *U. L. Ins. Co.,* 85 N. Y. 278; *Cleaver* v. *T. Ins. Co.,* 65 Mich. 527; *Guilford* v. *Mulkin,* 85 Hun, 491; *Carroll* v. *Sweet,* 128 N. Y. 19.) Plaintiff failed to prove her case and her complaint was properly dismissed. (Code Civ. Pro. § 541; *Walker* v. *A. C. Ins. Co.,* 143 N. Y. 167, 171; *Bogardus* v. *N. Y. L. Ins. Co.,* 101 N. Y. 334.) The point made by appellant, that the answer of the defendant did not raise any issue, is untenable. (Code Civ. Pro. §§ 519, 539, 546, 723; *Werner* v. *City of Rochester,* 149 N. Y. 563; *Reich* v. *Cochran,* 151 N. Y. 129; *F. N. Bank* v. *Church,* 3 T. & C. 10; 60 N. Y. 634; *Wall* v. *B. W. W. Co.,* 18 N. Y. 119; *Elton* v. *Markham,* 20 Barb. 343; *Armstrong* v. *Danahy,* 75 Hun, 405; *Stuber* v. *McEntee,* 142 N. Y. 206; *P. P. F. Co.* v. *Smith,* 51 Hun, 636; 20 N. Y. S. R. 473; *Bennett* v. *L. Mfg. Co.,* 110 N. Y. 150; *Zacharias* v. *French,* 10 Misc. Rep. 202.) The claim of counsel for appellant, that defendant's attorney did not move to dismiss on the proper grounds, and that failure to do so made it an error to grant the motion, is untenable. (*Merrill* v. *W. R. Co.,* 1 App. Div. 118; *Werner* v. *City of Rochester,* 149 N. Y. 563; *Reich* v. *Cochran,* 151 N. Y. 129.) The point raised by appellant, that the conditions refer to renewal premiums, is untrue. (L. 1853, ch. 463, § 10.)

HAIGHT, J. This action was brought to recover the amount of an insurance policy issued by the defendant upon the life of Joe H. Stewart, in which the defendant undertook to pay

$5,000 to Anna B. Stewart, his wife, if living; if not, to his executors, administrators or assigns, upon satisfactory proof of death. The policy is numbered 93,094, and bears date the 19th day of April, 1890. It was issued subject to the following conditions printed upon the policy: "That the first year's premium of $123.10 shall be paid at the home office on the delivery of this policy, and that thereafter, on or before the 15th day of April, in each subsequent year, the premium stated in the premium schedule in the margin hereof, as the premium for the said year, shall be paid at said office." And, further: "No agent nor any other person, except the president or secretary, in writing, has power to alter or change, in any way, the terms of this contract, or to waive forfeiture, or to write anything on this policy." By the terms of the policy the application was made a part of the contract, in which it was provided that "it will constitute no contract of insurance until a policy shall first have been issued and delivered by the company, and the first premium thereon paid during the life of the party proposed for insurance in the same condition of health as described in the application." Stewart died on the 14th day of August, 1890.

The defense interposed is that the first year's premium had never been paid, and that the policy never had a legal inception. The evidence is very meagre. As we have seen, Stewart is dead, and, consequently, the plaintiff could not avail herself of his statement. What appears in the case is substantially as follows: Under date of November 2, 1889, John M. Crane, as manager of the defendant, writes Stewart, saying: "Will you drop in and see me, or shall I call upon you some day between now and the 10th inst.? I shall be pleased to fix up the insurance for you next week and arrange for the premium payment, so as to be mutually satisfactory." This was followed by a written application signed by Stewart, dated the first day of April, 1890. The policy, as we have seen, bears date on the 19th day of April thereafter, and in the defendant's answer it is alleged that upon the delivery of the policy to Stewart he, "at the time of such delivery and in

connection therewith, made and delivered to such agent a premium loan note on said policy for the full amount of the first year's premium, $123.10, by which he undertook and agreed to pay said amount of $123.10 three months thereafter, which said note recited, among other things, that it was given in connection with the policy mentioned in the complaint." The next we hear of the note is from a letter written by J. H. Simonton, cashier, dated " 5 / 26," and addressed to Stewart, and is as follows: " Your note for $123.10 given in settlement of premium due on pol. No. 93,094 will be due and payable on the 31st inst. at your office, where it will be presented at that date." It will be observed that there appears to be some confusion with reference to dates. As we have seen, the policy bears date the 19th day of April, 1890. If issued at the company's office in Portland, Maine, on that date and transmitted to its agent in New York, it naturally would be some days thereafter when received and delivered to Stewart by the agent. The note was for three months, and consequently it would not fall due until the latter part of July, and yet this letter notifying Stewart that it will become due and payable on the 31st instant is dated 5 / 26, which would indicate May 26, instead of July. Possibly there was an error in the numbering of the month, or that it is a misprint. We do not, however, regard it as material. The next evidence that we have upon the subject is a letter written by John M. Crane, the manager, to Stewart under date of August 7, 1890, in which he states: " My Dear Stewart: I deposited your check for $123.10 to-day for collection. Kindly see that it is protected. I am about used up with the hot weather and intend to leave the city for a week's rest." This was followed by another letter from Crane dated two days thereafter, in which he states : " The bank has returned your check marked ' not good.' I am sorry for this, as it places me in a somewhat unpleasant position. I feel sure you must have overlooked the matter and will fix it up as soon as your attention is drawn to it." On August 12th, 1890, Stewart replies to Crane as follows: " Have been very sick and at

home in bed since last Wednesday. Will be able from present indications to attend to business by the last of the week. Will at once on being able to get around provide for that check. It would have been paid and had ample funds to meet it on last Thursday A. M. if I had not been stricken down the day before, Wednesday." On the next day, August 13th, Crane replies to Stewart, saying: "I am in receipt of yours of the 12th, and am sorry to hear of your having been ill and trust that you are now feeling better. As regards that check would say that you know just how I am placed in the matter, and I hope that you will fix the matter up next week." Stewart died at one o'clock the next morning. He was stricken with a disease which caused his death ten days before.

The note is not printed in the case. The evidence does not disclose what became of it. The inference, perhaps, is permissible that it was presented on the 31st day of July, when it fell due, and that Stewart gave a check therefor, which was deposited by Crane on the 7th day of August thereafter as alluded to in his letter of that date, and that this check was not paid at the time of Stewart's death. We do not understand, however, that the failure to pay the check operated as a forfeiture of the policy, for the reason that Crane, in his letter of August 13th, gave him to understand that it would be satisfactory if the check was paid the next week, and no notice was given that the company intended to insist upon any forfeiture. It is true that the defendant was a Maine corporation, and that its contracts were to be construed under the laws of that state, but no evidence was given tending to show that the laws of that state were, or are, different from our own, and, in the absence of such evidence, we may properly assume that they were the same. (*Monroe* v. *Douglass,* 5 N. Y. 447; *Savage* v. *O'Neil,* 44 N. Y. 298; *Chapin* v. *Dobson,* 78 N. Y. 74.)

It is contended that Crane had no authority to waive the payment of the premium in cash, to accept a promissory note, or to extend the time of such payment, and this becomes not only the important question in this case, but one largely affecting the public interests. The giving of promissory notes in

payment for premiums on insurance is a common occurrence. Numerous cases in which that has been done are to be found in the books. Especially is this true with reference to fire insurance, in which the custom is quite prevalent among insurance agents to deliver insurance policies, taking promissory notes for the premium, or of leaving the premiums to be paid at some future date, when called for by the agent or a collector of the company. If in all these cases the insurance is void, and has no legal inception, it is time that that fact was understood, for many, doubtless, are under the impression that they have insurance who have not the means at hand to show that the agent with whom they contracted had special authority to extend the time of the payment of the premium. Insurance companies have a right to have their contracts construed under the rules recognized in construing other contracts. Ordinarily, the principal is bound by the contract of his agent, where he acts within the scope of his authority. But insurance companies have generally sought to relieve themselves from this liability by inserting clauses in the application and policy restricting the powers of agents and their liability thereunder. This right in insurance companies we must recognize, unless, by so doing, their contracts would become tainted with fraud, and in such cases we will presume that a waiver was intended rather than fraud.

Crane, in his testimony, stated that he was the agent of the defendant, and was known as the manager of its New York department, which he describes as a regular department in which the company had a cashier, and that the company furnished the stationery that was used in his department. On referring to the letters written in the case upon the stationery furnished by the defendant, we find printed headings, containing the name of the defendant company, " Portland, Maine," the name of its president, the date of incorporation of the company and the payments made to policyholders, together with the following : " Metropolitan District, 96 Broadway, Schemmerhorn Building, John M. Crane, Manager. J. H. Simonton, Cashier." It thus appears that the defendant published

34

and held out to the public Crane as its manager and Simonton as its cashier.

The case is silent as to whom the note was given by Stewart on the delivery of the policy to him, except as it appears in the allegation in the answer, to the effect that it was delivered to Crane ; but the next account we have of it is in the hands of the officers of the company, for we find Simonton, its cashier, writing with reference to it notifying Stewart of the day that it will be presented at his office for payment. We thus find the company holding the note, warning Stewart as to the time it will become due, making no complaint with reference to its being given in the place of cash payment, but apparently accepting it and recognizing the contract made by its manager and his authority to extend the time for the payment of the premium.

Again, was the note accepted by the company in payment for the first year's premium ? The cashier, in effect, states that it was. He says : " Your note for $123.10, given *in settlement* of premium due on pol. No. 93,094, will be due and payable," etc. It was given in settlement of the premium. Bouvier defines " settlement " to mean payment in full, so that it would seem that the company not only accepted the note in payment for the first year's premium, but in accepting it and holding it the company recognized the power and authority of Crane to so contract with Stewart. If so, the note had a valid inception, and Stewart's life was insured from the date of the delivery of the policy to him.

There is still another theory upon which, we think, the plaintiff established a cause of action, at least sufficient to make it a question of fact for the jury. It is apparent that Crane represented to Stewart that he had an insurance and that Stewart supposed himself to be insured from the letters, expressions and acts to which we have referred. It is also apparent that the contract was that Stewart was to have credit. This may be clearly inferred from Crane's first letter. The rule is, that the knowledge of the agent is the knowledge of the principal, and it will be presumed that the company knew

the terms of the contract entered into by its agent, and either waived the provision of the policy for immediate payment of the premium or held itself estopped from setting it up, for to hold otherwise would impute to it a fraudulent intent to deliver and receive pay for an invalid instrument. Suppose, instead of taking a note for three months, the agent had taken a note for one year. At the end of the year the company could present the note and enforce payment. It was given for the year's premium, and yet, under the defendant's claim, the insurance policy would have had no valid inception during that time. The transaction would thus be the procuring of a contract to pay for that which the deceased was never to possess. In short, it would be a fraud upon him. It will be observed that in this case the breach of the conditions of the policy insisted upon lies at the threshold of the contract, which, if not then performed, prevents the formation of an enforceable contract. The delivery of the policy and the payment of the premium were concurrent acts, and if there was a breach of the condition it was in the concurrent acts which were designed to form the contract, and yet, notwithstanding this, the policy was delivered by the agent who took from Stewart a promissory note for the amount of the premium for the first year running three months, at the end of which time the company could enforce payment of the note and still, as is claimed, avoid any liability upon its policy during that time.

In the case of *Van Schoick* v. *Niagara Fire Ins. Co.* (68 N. Y. 434) a policy of insurance contained a condition that if a building is insured that is on leased land the same must be specifically represented to the company and expressed in its policy in writing, otherwise the insurance will be void. The building insured was on leased land, and this fact was not expressed in the policy. It was known, however, to the agent who obtained the insurance. In an action upon the policy it was held that the knowledge of the agent was the knowledge of the defendant. When it accepted a risk it had information that the building stood upon leased ground; that it was to be

presumed that the defendant had overlooked the condition and so had forgotten to express the fact in the policy, or that it waived the condition or held itself estopped from setting it up, as to presume otherwise would be to impute to it a fraudulent intent in issuing a policy known to it to be invalid. FOLGER, J., in delivering the opinion of the court, says: "It has been held over and over, that the customary clause in a policy, that it will not be binding upon the insurer until the premium is paid in fact, may be waived by parol, or by act, and the policy may be delivered and become a binding contract upon the insurer, without payment in hand of the premium." Again, he says, "In the first class of cases, it has been thought that the fact, that the insurer delivered to the insured the written contract, as the consummated agreement between them, and did not then exact present payment of the premium as a necessary precedent to delivery, was too plainly in contradiction with the condition for prepayment, for it to be supposed that it was meant by the insurer or supposed by either party that it was intended to make that condition a potent part of the contract. Such a provision, it is said, could have no effect upon the delivered and perfect contract in which it was contained. It would be imputing a fraudulent intent to the defendant in this case, to say or to think that they did not mean when they delivered this policy to the plaintiff, to give him a valid and binding contract of insurance, or that they did not mean that he should believe that he had one, or that they did not suppose that he did so believe. And such imputation can be avoided, only by supposing that it had overlooked this condition, and so forgotten to express the fact as to the building, in writing, upon the policy; or that it waived the condition, or held itself estopped from setting it up. The condition of prepayment of premium is, like this under consideration, one at the threshold of the making of the contract, and if it is not observed, no valid contract is made unless it is stepped over or thrust aside. It is consistent with fair dealing and a freedom from fraudulent purpose, to hold that one or the other was done; that is, that there was waiver, or is estoppel."

In *Wood* v. *Poughkeepsie Mut. Ins. Co.* (32 N. Y. 619) the condition of the policy was that the insurance shall not be binding until actual payment of the premium. PORTER, J., in delivering the opinion of the court says: " Boggs was a general agent of the company. If he had waived the condition of prepayment, the insurers would have been bound by his act, though it was in violation of their private instructions. The law would have implied such waiver if the policy had been delivered by the agent without requiring payment of the premium, and had been accepted by the plaintiff as a complete and executed contract."

In *Boehen* v. *Williamsburgh City Ins. Co.* (35 N. Y. 131) the same condition appeared in the printed terms of the policy to the effect that it should not be binding until the premium was paid, yet it was held that the delivery by the agent of the policy without exacting payment of the premium operated as a waiver on the part of the company.

In the case of *Bodine* v. *Exchange Fire Ins. Co.* (51 N. Y. 117) a similar condition appeared in the policy and yet it was held that it could be waived by parol by an agent or that such waiver may be inferred from circumstances. (See, also, *Trustees* v. *Brooklyn Fire Ins. Co.*, 19 N. Y. 305 ; *Sheldon* v. *Atlantic Fire Ins. Co.*, 26 N. Y. 460 ; *Whited* v. *Germania Fire Ins. Co.*, 76 N. Y. 415 ; *Richmond* v. *Niagara Fire Ins. Co.*, 79 N. Y. 230 ; *Hastings* v. *Brooklyn Life Ins. Co.*, 138 N. Y. 473 ; *Forward* v. *Continental Ins. Co.*, 142 N. Y. 382 ; *Wood* v. *American Fire Ins. Co.*, 149 N. Y. 383, and *Miller* v. *Life Ins. Co.*, 12 Wall. 285.)

We think the court erred in dismissing the complaint, and that the judgment should be reversed and a new trial ordered, with costs to abide the event.

All concur, except GRAY and O'BRIEN, JJ., dissenting, and PARKER, Ch. J., not sitting.

Judgment reversed.