RUSSELL v. PRUDENTIAL INS. CO. OF AMERICA. (Supreme Court, Appellate Division, Fourth Department. May 20, 1902.) Action by Amelia Russell against the Prudential Insurance Company of America. From a judgment entered on a verdict against defendant for $1,131.63, and from an order denying a new trial, defendant appeals. Affirmed. D. Raymond Cobb, for appellant. Frederick A. Kuntzsch, for respondent.

PER CURIAM. Judgment affirmed.

HISCOCK, J. I am unable to agree with the conclusions reached by a majority of my associates in this case. The action was brought by plaintiff as a beneficiary under an insurance policy claimed to have been issued by the defendant upon the life of her husband, one Robert J. Russell. The defense relied upon at the trial was, in effect, that the initial premium upon said policy was not paid when the latter was delivered, or at any time before the insured died, and that therefore, under its terms, the policy never became valid and binding upon the defendant. The principal legal question involved under said defense, upon said trial and upon this appeal, was and is whether the defendant was bound by or subsequently ratified the alleged waiver by the agent who delivered said policy of its provisions calling for the payment of such initial premium before it went into effect. The learned trial justice held as matter of law in the affirmative upon this proposition. In this respect I think that he fell into such error as to call for reversal of the judgment. December 26, 1899, the deceased made written application to defendant for insurance to the extent of $1,000. Before that date he had taken out another policy for the same sum, which after his death was paid without contest. In response to such application, under date of December 30, 1899, the defendant in due form, in accordance with said application, wrote the policy of insurance for $1,000 upon said Russell's life, payable to plaintiff as his beneficiary, which is in controversy here. At that time one Tennant was its general agent in Syracuse and vicinity, where

Russell lived, and one O'Donnell was a subagent living in Oswego. Plaintiff claimed and testified that upon the evening of January 6th ensuing said two people came to the house of her husband and herself, and delivered said policy to the former, in substance agreeing that he might have 30 days in which to pay the first or initial premium called for by the policy, but that the latter should take effect immediately; that the receipt for said premium was made out by Tennant and delivered to him, and by him subsequently given back to the other agent, O'Donnell. Russell was killed in an accident January 10th, following. The above claim and evidence was vigorously and unqualifiedly disputed, and its truthfulness denied, by each of said agents. Whatever opinion we may have upon the merits of this particular issue is immaterial, for the jury to whom it was pointedly and carefully submitted by the trial justice has found in favor of the plaintiff's version thereof. The only question for us to consider is whether said arrangement, upon the assumption that it was made, either was valid at the time or subsequently became so by the acts of the defendant. The provisions of the policy distinctly prohibited it, and therefore, if valid, it was or became so through waiver of such prohibitory provisions, either by the agent or the company acting through other channels. The written contract between the insured and the defendant, as evidenced by the policy and the application therefor, absolutely forbade such an arrangement. There is practically no dispute upon this point. The application contained this provison: "And it is further agreed that the policy herein applied for shall be accepted subject to the conditions and agreements therein contained, and said policy shall not take effect until the same shall be issued and delivered by the said company, and the first premium paid thereon in full, while my health is in the same condition as described in this application." The policy contained this clause: "In consideration of the application for this policy, which is hereby made part of this contract, and of the quarter annual premium of $7.02 which it is agreed shall be paid to the company in exchange for its receipt on the delivery of this policy and on or before the 30th day of March," etc., "the Prudential Insurance Company of America hereby insures the life of Robert J. Russell," etc. The trial justice instructed the jury that if the agent, Tennant, did make the arrangement with the insured claimed by plaintiff, then the latter was entitled to recover. This amounted, as we understand it, to holding as matter of law that said agent was authorized to make such arrangement, and this involves a consideration of his powers.

In such consideration we start out with provisions in the policy which, in our opinion, forbade the exercise of such power by him. The policy contained the following: "Regarding Agents. No agent has power on behalf of the company to make or modify this or any contract of insurance, to extend the time for paying a premium, to waive any forfeiture, or to bind the company by making any promise, or making or receiving any representation or information. These powers can be exercised only by the president, one of the vice presidents, or the secretary, and will not be delegated." Neither of the agents who visited Russell occupied any one of the offices mentioned. It is claimed in behalf of plaintiff that the clause forbidding an agent "to extend the time for paying a premium" did not apply to the initial premium. Our attention has been called to one or more cases holding this proposition. Those cases, however, involved a construction of the particular clauses under consideration, and which were not identical in language with the one before us. We see nothing in this clause indicating that it did not apply to the first, as well as to subsequent, premiums. Independent of this, however, other language in the paragraph quoted enjoined the arrangement claimed to have been made by defendant's agents. The policy of insurance and the application therefor, which presumptively constituted the contract between the parties, as we have seen, expressly provided that the former should not take effect until payment of the first premium. The clause limiting the power of agents to which we now refer provided: . "No agent has power in behalf of the company to make or modify this or any contract of insurance." The arrangement claimed to have been made unquestionably modified the contract of insurance, by allowing it to take effect before payment of the first premium. We must therefore find a power conferred upon the agent adequate to answer the purposes of plaintiff's case, if at all, not only outside, but in direct contradiction, of the provisions of the policy. Plaintiff seeks to find this power in two ways: First, in the written contract between defendant and its agent; second, in the general power with which it really or apparently clothed him. The written agreement made Tennant its "general agent for Syracuse, N. Y., for the purpose of procuring applications for insurance, * * * and for the purpose of collecting and paying over premiums to the company on such insurance when effected, and of performing such other duties in connection therewith as may be required by the said party of the first part." It contained the following limitation upon his powers: "It is understood and agreed that the said general agent has no authority on behalf of the Prudential Insurance Company of America to make, alter, or discharge any contract, to waive forfeitures, nor to receive any moneys due or to become due to said company, except on policies or renewal receipts signed by the president, secretary, or manager of the ordinary branch, and sent by him for collection." Some of the language used in the clause last quoted is similar to that in the policy itself already referred to, and in our judgment the prohibition of power in the agent to "make, alter, or discharge any contract" prevented him from performing the act relied upon in this case to make the policy effective. So that we do not believe that the defendant by express contract and arrangement conferred upon Tennant the necessary power to waive payment of the premium. Neither do we find in the record any evidence which indicates that defendant, out-

side of this contract, either really or apparently clothed him with such power. It is true that he was designated by defendant as its general agent, and it is fair to assume that he exercised general supervision over the management of the routine and details of its business in the neighborhood covered by his agency. It does not appear, however, that he had been accustomed to waive payment of initial premiums or perform other acts kindred thereto with the knowledge and consent of the company. Cases have been cited by counsel for plaintiff holding that a general agent may waive or extend time of payment of premiums; that general authority might be assumed to go with such a position broad enough to cover such acts. Those cases, however, as we think, have no application here, in the face of absolute provisions in the policy which told and notified the insured that neither Tennant as general agent nor anybody else outside of specific officers named had the power to do the act alleged. There is no question but that an insurance company, as any other principal, has the right to expressly limit and hedge around the powers of its agents, and if it gives notice of these limitations to those with whom it deals they are bound by them, in the absence of other acts enlarging or waiving the limitations. We do not think that the defendant in this case, by permitting a different course of conduct upon the part of its agent, clothed him with greater powers in the respect under consideration than were expressly delegated to him, or broke down the barriers which it had put up around his authority. Therefore, to sum up this branch of the case, the undisputed evidence establishes in our mind that the policy issued to plaintiff's husband by its terms did not take effect until the first premium was paid; that it likewise prohibited the defendant's agents from making such a contract as is claimed, waiving this provision; that there is nothing, either in the defendant's express contract with its agent or in the powers with which it had really or apparently clothed him, outside of this contract, which overruled the restrictions in the policy upon his power and enabled him to make such waiver; and that therefore it was error to instruct the jury as matter of law that, if Tennant did extend the time of payment of the first premium, plaintiff was entitled to recover.

Plaintiff's counsel has called to our attention some cases holding, in effect, that where an agent of an insurance company had made a contract of insurance in violation of some provision in the policy, the company would be deemed to have waived such provision; that otherwise a fraud would be committed upon the insured, by purporting to make a contract which really could not be enforced and would be no contract at all. Those cases were necessarily decided upon the facts which therein appeared, and we think that this case is distinguished from them in the respect that the policy and the application, which the insured had and which he must be deemed to have read, expressly notified him that the agent who was extending the time of payment of the premium and purporting to waive the provisions of the

policy of insurance had no power to do it. No fraud was committed upon the insured when he attempted to bind the defendant, in derogation of its rights, by dealing with an agent whom he knew, or ought to have known, had no power in the premises. While it perhaps was not explicitly held upon the trial, it was rather intimated and argued by the respondent that the defendant is to be held in this case because in some way it is estopped from denying the acts of its agent, or because it subsequently ratified the same. As we have already indicated, we are unable to find any evidence upon which, in opposition to the express provisions of its policy, defendant can be said to have so held out Tennant as authorized to make the alleged agreement, or to so have induced the insured to rely upon his acts in making it, as to prevent it from now questioning the act. Except under unusual circumstances, such question of estoppel would at least have presented a question of fact for the jury. Neither do we think that defendant, upon the proofs, can be said to have ratified the act of its agent. The policy was delivered upon the evening of January 6th. The insured died January 10th. During this time the receipt for the first premium was in the possession of the company through its agent. No note or other tangible evidence of the contract claimed to have been made upon the delivery of the policy passed into the possession of the company. It not only does not appear that no report was made to it of what is claimed to have been done, but the contrary expressly appears. Tennant, whose credibility has been vouched for by plaintiff by calling him as a witness, testified that he made no report on the policy of any kind until he reported it for cancellation, which was after the death of the insured. There was accordingly nothing, in our judgment, which in the way of the receipt of proceeds of the insurance, or in the lapse of time, or in the way of express knowledge, which justifies the conclusion, certainly as matter of law, that defendant had ratified the act of its agent. In these and other respects the case differs materially and substantially from that of Stewart v. Insurance Co., 155 N. Y. 257, 49 N. E. 876, 42 L. R. A. 147, which is especially relied upon by the respondent. That case, like this, was one where the policy of insurance called for the payment of the first premium before it took effect, and where there was a restriction upon the power of agents largely similar to the one established in this case. But in that case a note was taken for the first premium, which passed into the possession of the company itself through its proper agents, and there were subsequent dealings between the defendant, through its agents and the insured, who had given the note. A long time elapsed during which this was going on, and during which the company took no steps to repudiate or disaffirm the conduct of its agent. Under these and other circumstances, fully set forth in the opinion, it was held that an apparent acceptance by the company of the contract, made by its local manager on delivery of the policy, to take a note for the first premium, and a recognition of his authority to so extend the

time of payment, might be inferred. It was held that in these subsequent transactions the company was to be charged with the knowledge possessed by its, agent, and therefore bound by them. We think that on account of those important facts appearing in that case, and not in this one, the former is not an authority for plaintiff's position in this action, and that the judgment and order appealed from should be reversed, with costs to appellant to abide event.

WILLIAMS, J., concurs.