important. The statement that the relator was duly appointed is a conclusion of law, rather than a statement of fact.

The order appealed from should therefore be reversed, with costs. All concur; JENKS, J., however, being of the opinion that the court could and should have granted an alternative writ.

(118 App. Div. 416)

## HOAR v. UNION MUT. LIFE INS. CO.

(Supreme Court, Appellate Division, Third Department. March 13, 1907.)

1. PAYMENT—NOTES OF DEBTOR.

The giving of a debtor's note operates merely as an extension of time, in the absence of an express agreement to the contrary, so that on default in payment of the note the original indebtedness is revived, with all its incidents.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 39, Payment, §§ 70, 72.]

2. INSURANCE—PAYMENT OF PREMIUMS—NOTICE—FORFEITURE.

Certain policies provided that, after two annual premiums had been paid, the policy became nonforfeitable for an amount equal to one-tenth of the insurance for each and any premium so paid, and that, if the amount of any annual premium or interest due on any note taken in part payment of a former annual premium was not fully paid as provided, then the policy should be forfeited, except as to annual payments for prior years which shall have been fully made, and that, if any note given in payment of any premium should not be paid according to its terms, the policy should become immediately void, except as respects prior payments. The policy called decedent the "insured," and the beneficiary the "assured," and declared that defendant might set off any demand against the "assured" arising in connection with the insurance against any claim for which it should be liable. Decedent gave notes in part payment for the first and subsequent premiums, until five premiums had accrued on one policy and four on another; none of such premiums ever having been paid. Held, that the clause relating to set-off did not limit the company's right to claims against the beneficiary only.

Smith, J., dissenting.

Appeal from Special Term.

Action by Mary K. Hoar, as administrator of the estate of Eliza D. Kerr, deceased, against the Union Mutual Life Insurance Company. An interlocutory judgment was rendered in favor of plaintiff. From an order denying the defendant's motion for a new trial, it appeals. Reversed, and new trial ordered.

The action is brought upon two policies of insurance upon the life of John W. Kerr, now deceased. The first policy was issued on July 1, 1869, for the sum of $3,000, with an annual premium of $213, due the 1st day of July in each year for ten years. This policy contained the following provision: "That after two or more of said annual premiums have been fully paid, this policy becomes a paid-up nonforfeiture policy, for an amount equal to the sum of one-tenth that hereby insured for each and every premium which shall have been so paid, requiring no further payments of premium, subject to no assessments, but entitled to its apportionment of the surplus accumulation in the ratio of its contribution thereto." The policy was payable to the wife of John W. Kerr, to wit, Eliza D. Kerr, her executors, administrators, or assigns. The policy contained the following conditions: "First, that if the amount of any annual premium herein provided for, or the interest due on any note taken in part payment of a former annual premium, is not fully paid on the day and in the manner so provided for, then this policy shall be null and void, and

wholly forfeited, except as respects annual payments for prior years, which shall have been promptly and fully made and the benefits of which are thus hereinbefore secured from forfeiture. Second, that if, at any time, any note, check, or draft (other than the usual premium note for part of annual premium forborne)·shall be given in payment or part payment of ·any premium then due, or to become due, for or on account of this policy, and such note, check, or draft shall not be paid according to the provisions thereof, then this policy shall become immediately void, and· the company be thereby released from all obligations under it, except as respects payments for prior years which shall have been promptly and fully realized by the company in all respects according to their terms, and the benefits of which are thus secured from for-' feiture as above provided." The first annual premium of $213 was settled July 1, 1869, in the following manner: Sixty per cent. thereof was paid, one-fourth in cash and the balance of three-fourths in three promissory notes, of equal amounts, payable in three, six, and nine months. These promissory notes were called "cash notes." They were paid by Mr. Kerr and delivered up to him at maturity. For the remaining 40 per cent. of the premium Mr. Kerr gave his note for $85, payable 12 months after date, with interest. This note was also made out on a printed blank furnished by the company, and was called a "regular premium note." Upon July 1, 1870, the premium of $213 was settled in a similar manner. Sixty per cent. thereof was paid, one-fourth in cash and the other remaining three-fourths in cash 'notes, payable in three, six, and nine months. The interest on the premium note of the prior year was paid in full, but the principal 'of such premium note was included in the new premium note, which was given for 40 per cent. of the premium due July 1, 1870, making the premium note for $170 payable 12 months after date. Similar settlements were made each year for six years; the principal of each premium note being included in the principal of the new premium note taken for a part of the premium due at the time it was taken. The first three premium notes contained a provision "that if the interest on this note is not paid annually, or the note itself at maturity, then all benefits which full payment in cash of said annual premium would have secured shall become immediately void and forfeit to said company." The other three notes did not contain such provision. In each of the last four settlements certain sums aggregating $95, being the surplus apportioned to the policy, was deducted from the notes before the renewal note was given. Applying this amount in extinguishment of the two first premium notes would leave a balance remaining unpaid upon them of $75. After the sixth settlement of this nature two of the cash notes were paid. The third cash note was not paid, nor was the premium note or any interest paid thereupon. No other payments were made on the policy. The claim of the plaintiff is that under the policy the first five premiums were fully paid, and that upon the death ,of John W. Kerr, his widow or her executors, as she died before he did, were entitled to five-tenths of the face of the policy. The policy provided: "Said company shall have the right to set off any demand they shall have against such assured, her assigns or representatives, arising incidental to or in connection with this insurance, against any claim for which this company shall be liable thereon." The contention of the defendant is that the failure.to pay this cash note and the failure to pay this last premium note or interest thereupon constituted an entire forfeiture of all benefit under the policy, and that two annual premiums were not actually paid or received, and that the notes were a proper offset against any liability of the company upon the policy. The second cause of action raised substantially the same questions. That was a policy taken out December 12, 1870, for $5,000, upon the life of John W. Kerr. It was payable to his wife, Eliza D., but in case of her previous death to his surviving children. The amount of the annual premium was $362.25. These premiums were settled in the same way for five successive years. Neither the cash notes nor the premium notes given in December, 1874, nor any other premiums, were ever paid. The wife having died before John W. Kerr, the plaintiff holds the rights of the children by assignment. Upon this policy the plaintiff claims the right to recover as for four-tenths of the face of the policy. This claim the defendant disputes, upon the ground that all benefits under the policy have been forfeited by failure to pay the cash notes and the premium note

given in December, 1874. The court at Trial Term held that upon the first policy the premium had been fully paid for five successive years, within the meaning of the policy, and upon the second policy the premium had been fully paid for four successive years, and recovery was allowed as upon a paid-up policy, in the first case for five-tenths, and in the second case for four-tenths, of the amount of insurance. Interlocutory judgment was entered, and this motion made, under section 1001, Code Civ. Proc., for a new trial.

Argued before SMITH, CHESTER, KELLOGG, and COCHRANE, JJ.

John J. Linson, for appellant.
Moody & Getty, for appellee.

JOHN M. KELLOGG, J.   By the contract of insurance between the company and the husband, he agreed to make certain annual payments on each July 1st for 10 years, in consideration of which it was to pay the wife the amount of the policy upon his death. Whether she would ever realize anything upon the contract depended upon the manner in which he performed his contract. She stood in no contract relations with the company, except that as the beneficiary of her husband she was to reap the benefits of his performance. Not one of the cash payments provided for by the policy was made by the husband. He gave his promissory note for a part of each. The giving of a debtor's note does not pay a debt. It may extend the time of payment; but, if default is made in the payment of the note, the original indebtedness is revived, with all its incidents.

The nonforfeiture clause in the policy applies only where two annual premiums have been fully paid, and the provision as to payment is made more certain by the further provision in the policy where, in speaking of the nonpayment of a cash note, check, or draft, it provides that upon such nonpayment the policy shall be void, "except as respects payment for prior years which shall have been promptly and fully realized by the company in all respects according to their terms, and the benefits of which are thus secured from nonforfeiture as above provided." The provision in the premium notes that they shall not be allowed under the nonforfeiture clause as full payment, until paid, really adds nothing to the transaction. They were not payments, but were only means of procuring payment, and, until paid, were practically unimportant, except to show extension of time for payment; but, when past due, they ceased to have any material effect. The maker had defaulted in his contract, and could gain no benefit from his broken promise, but falls back upon the original contract, which he never has performed. But these notes make certain the understanding of the parties that after default they cannot give the delinquent any benefit under the nonforfeiture clause.

The neglect to continue this provision as to the nonforfeiture clause in some of the renewal notes does not benefit the plaintiff. Upon failure to pay such renewal note, the former note was revived, with all its provisions and incidents; and clearly all notes containing this clause, which are represented in the last renewal note, cannot now be considered under the nonforfeiture clause. The long-continued default in payment of the last renewal note, representing an unpaid part

of each annual premium on the policy, deprived the plaintiff of any benefit under the nonforfeiture clause.

If the clause in the policy, that any claim that the company has against the assured may be set off against the amount due upon the policy, relates only to a claim against the wife of the party making the contract, that clause would clearly indicate that none of the notes was intended as actual payment under the nonforfeiture clause.

The policy seems to draw a distinction between the words "insured" and "assured," treating the husband as the insured, and the wife as the assured; but she had no dealings with the company, and it could not have any claim against her arising out of the policy. He had dealings with it, and naturally would be indebted to it on account of matters arising out of the policy. The words "assured" and "insured" are so nearly synonymous that they are frequently used interchangeably. It is not probable that the company would accept the notes of the husband from year to year, relying upon his personal responsibility, agreeing to pay the wife the full amount of the policy, without the right to offset the notes. Any claim against the wife for any cause could be legally offset against the amount payable upon the policy. It is not probable that that right of offset was intended to be limited to a claim arising out of the policy only. Neither is it probable that the parties inserted this provision without intending that it should have some reasonable effect. The situation indicates clearly that it was the intention that any indebtedness on account of the policy should be an offset against any amount due upon it. In either view of the case, there can be no recovery.

The judgment should be reversed on the law and the facts, and a new trial ordered, with costs to the appellant to abide the event.

CHESTER, J., concurs. COCHRANE, J., concurs in result, upon ground last stated. PARKER, P. J., not voting, being not now a member of the court.

SMITH, J. (dissenting). In the policies themselves no provision is made authorizing the payment of these premiums otherwise than in cash. That such might be permitted, however, seems to have been contemplated by the conditions inserted in the policy relating to the nonforfeiture of any notes given for a part thereof. It is stipulated that the method of payment actually adopted was agreed to between the insured and the company, and the first question for our determination is whether the inclusion of the principal of a premium note in each successive premium note constituted full payment of the premium, within the terms of the nonforfeiture clause of the policy, or that clause which provided for paid-up insurance to extend to so many tenths of the principal as were represented by the premiums fully paid. Primarily the payment of a premium by a promissory note, which is afterwards included in renewal notes, ought not to constitute such payment as to give to the insured the benefit of a provision in the policy which is only given to him upon the full payment of a premium. If, however, the company intended to accept these notes as full payment of the premiums, it had the right so to do, and it

might lawfully contract to waive full payment in cash, which in the policy is made a condition precedent to the right of the insured to claim a paid-up policy.

But the intention of the parties is to be gleaned, not alone from the policy itself, but from all of the papers then executed. Among the papers executed upon each settlement when the premium was provided for was the premium note. Upon July 1, 1869, the premium note contained this condition:

"And it is an express condition of the acceptance of this note by the said company in part payment of the annual premium for policy No. 28,615, which condition is fully agreed to by the promisor herein, that such acceptance shall in no wise affect the condition in said policy, respecting the forfeiture thereof in case of the nonpayment of any other portion of said annual premium, and that if the interest on this note is not paid annually, or the note itself at maturity, then all benefits which full payment in cash of said annual premium would have secured shall become immediately void and forfeit to said company."

In view of the condition contained in the note, it seems clear that it was not the intention of the company to waive the payment in cash and to consider the part payment by the premium note as entitling the insured to such benefits as would come from the full payment of the premium, unless such premium note were paid at maturity. The result of the transaction was simply this: The policy was continued in force for another year, and if the insured died within that time the beneficiary would be entitled to the full benefit of the policy. Upon the giving of the premium note, instead of the cash, however, in part payment of the premium, the insured has in effect waived his rights under the nonforfeiture clause of the policy. If the premium notes given at the different settlements during the next five years had contained the same conditions, it would have to be held as matter of law that the insured, by failing to pay the same, had waived the benefits of nonforfeiture which the policy assured to him in case of full payment of more than two premiums. In the settlement of July 1, 1872, however, the premium note contained the condition first specified in the premium note of July 1, 1869; but the last condition therein specified, to wit, that if the interest on the note, or the note itself, is not paid at maturity, all benefits which full payment in cash of said annual payment would have secured should become void and forfeited to the company, was omitted. The same is true of the premium notes given in 1873 and 1874. This omission could not have been unintentional. For the first three years the company required the insured to waive the benefit of the nonforfeiture clause if he would pay part of his premium with a premium note. Thereafter this waiver was not required of the insured. The inference is irresistible that thereafter the acceptance of the premium note was taken as full payment of the premium, and was intended to give to the insured every benefit which the policy secured to one who had paid the full premiums thereupon.

This inference is strengthened by the acts and declarations of the defendant evincing its understanding that the receipt of these premium notes constituted full payment, except so far as such payment might

be qualified by the terms of the notes. The notes recited upon their face that they were taken in part payment of the annual premium. The plan of payment of each premium by cash, cash notes, and premium notes was designated, in a receipt given to the insured, as the "figures of 1870 settlement," etc., and in each year thereafter a receipt in similar terms was given to insured. Moreover the policy itself acknowledges payment of the first year's premium, though payment was made by this agreed plan. The word "settlement," as used by this defendant, has received judicial construction in the case of Stewart v. Same Defendant, reported in 155 N. Y. 266, 49 N. E. 878, 42 L. R. A. 147. Judge Haight, in writing for the court, says:

"Again, was the note accepted by the company in payment of the first year's premium? The cashier, in effect, states that it was. He says: 'Your note for $123.10, given in settlement of premium due on pol. No. 93,094, will be due and payable,' etc. It was given in settlement of the premium. Bouvier defines 'settlement' to mean payment in full, so that it would seem that the company not only accepted the note in payment for the first year's premium, but in accepting it and holding it the company recognized the power and authority of Crane to so contract with Stewart."

In each year the premium note of the former year was surrendered to the insured. In view of this surrender, of the recital in the note that it was taken in part payment, and of the receipt stating that the giving of the notes constituted a "settlement" for each year, the change of the terms of the premium note by the omission of the condition that its payment should be essential to entitle the insured to the benefits of a paid-up policy could only be intended either as a waiver of such condition or to mislead the insured. It must be borne in mind that this characteristic of the policy was its chief attraction, and the company should be held to the utmost good faith in treating with the insured concerning the same. The court will presume a waiver, rather than an intent to mislead.

The same reasoning applies to the second policy. The first premium notes contained the condition that a failure to pay the same would forfeit any rights guarantied by the policy to one who had paid full premiums. From the premium notes thereafter given was omitted this condition.

The defendant further contends that at least these premium notes should be offset against the amounts found due upon the policy. The difficulty with this contention lies in the provision of the policy itself, which provides for an offset as against the amount due upon the policy of all claims against the assured. In the policy itself a distinction is maintained throughout between the insured and the assured. The premium notes were in no sense a claim against the assured, but were simply claims against the insured, or his estate. The contract must be construed strictly against the insurer, by whom the contract was drawn.

• The defendant further contends that the significance which I attribute to the change in the terms of the premium note is not justified, because the defendant, without the right of set-off, would be giving the full benefit of this policy to one who only paid in cash a part of the stipulated premium. In those policies made payable to the estate

of the insured, the right of set-off would exist, which would fully protect the company. Furthermore, the taking of premium notes was not part of the contract of insurance, and was wholly discretionary with the company itself, and the company might well protect itself by requiring full cash payments from those who were not responsible and from whose estates the premium notes could not be afterwards collected. The Special Term has found as a fact that five premiums upon the first policy and four upon the second have been fully paid. That finding is, I think, sustained by the evidence, and it follows that the interlocutory judgment entered should stand.